IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Patrick B. SHEEHAN, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant-Respondent,

v.

Patrick B. SHEEHAN, Respondent-Appellant.

Supreme Court

*No. 97–1824–D.  Oral argument January 8, 1999.—Filed February 12, 1999.*

(Also reported in 588 N.W.2d 624.)

For the respondent-appellant there were briefs and oral argument by *Patrick B. Sheehan*, Milwaukee.

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope & McCarthy, LLP,* Edgerton and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. Attorney Patrick B. Sheehan appealed from the report of the referee concluding that he engaged in professional misconduct in his representation of three clients and recommending that his license to practice law in Wisconsin be revoked as discipline for that misconduct. However, at oral argument, Attorney Sheehan withdrew his contention that he had been denied due process by not being able to call witnesses to testify at the disciplinary hearing regarding mitigating circumstances surrounding his conduct, and he stated that he did not object to the referee's recommendations that his license be revoked and that he be required to pay the costs of the disciplinary proceeding. He also accepted that the issue of restitution to the clients harmed by his misconduct be considered at such time as he seeks reinstatement of his license to practice law. Consequently, Attorney Sheehan's appeal effectively was withdrawn, and the matter has proceeded as a review of the referee's report.

¶ 2. Based on the stipulation of the parties to the facts and the violations of the Rules of Professional

Conduct for Attorneys those facts constituted, the referee, Attorney Judith Sperling Newton, concluded as follows. Attorney Sheehan engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in three client matters, commingled his own funds with funds of clients, failed to hold client property in trust and keep requisite trust account records, represented multiple clients having different interests, failed to provide competent representation and act with reasonable diligence and promptness, and represented a client in a personal injury matter on a contingent fee basis without having obtained a written fee agreement.

¶ 3. We determine that the seriousness and extent of Attorney Sheehan's professional misconduct warrant the revocation of his license to practice law. Among other things, he knowingly used a forged document to obtain money from a client and used funds belonging to clients for his own purposes. He thus has demonstrated a willingness to place his own pecuniary interests over the interests, financial and otherwise, of clients whose representation he had undertaken and has established that he cannot be trusted to act on behalf of others in the legal system.

¶ 4. Attorney Sheehan was admitted to practice law in Wisconsin in 1968 and practiced in Beloit. On October 20, 1997, the court suspended his license to practice law pending disposition of this disciplinary proceeding, as the Board of Attorneys Professional Responsibility (Board) had requested, based on allegations that he had commingled and misappropriated funds belonging to clients. In addition, he had been suspended from the practice of law June 3, 1997, for failure to comply with continuing legal education requirements and has not been reinstated from that suspension.

¶ 5.    The facts concerning the first client matter to which the parties stipulated involve Attorney Sheehan's representation in the summer of 1994 to pursue the sale of the business of a client he previously had represented in various legal matters. The client offered Attorney Sheehan a commission if he could locate a buyer, and another client of Attorney Sheehan's, together with one of that client's business associates, expressed interest in purchasing the business. Attorney Sheehan undertook to represent both the client selling the business and the client interested in buying it, despite the fact that he was aware that there could be no sale because the owner's permit to operate the business could not be transferred.

¶ 6.    Attorney Sheehan prepared what purported to be an offer to purchase at a price of $800,000 and witnessed the purported signature of the buyer, knowing that the signature was not that of the person who signed the offer. Attorney Sheehan then gave the offer to his client, who accepted it, and received from that client $8,000 as partial payment of the commission. Attorney Sheehan deposited that money into his client trust account.

¶ 7.    Over the next several months, Attorney Sheehan led his client to believe that there would be a closing on the sale, knowing all the while that the signature on the offer to purchase was a forgery and that the document did not constitute a bona fide offer. In February 1995 he told his client, who was vacationing in Florida, that he should return to Wisconsin immediately to sign the necessary documents to close the sale. The client shortened his vacation by a month and returned to Wisconsin, whereupon he learned that there would be no sale. When he demanded the return of the $8,000 commission, Attorney Sheehan paid him

by means of a $2,000 check drawn on his client trust account and $6,000 in cash payments.

¶ 8.   Bank records of Attorney Sheehan's client trust account disclosed that Attorney Sheehan had used the $8,000 he had received from the client to pay other clients whose funds were no longer in his client trust account and to pay one of his employees. Attorney Sheehan was unable to produce copies of a client ledger sheet for the client in this matter or any other trust account documentation concerning the $8,000 he had been paid.

¶ 9.   Attorney Sheehan asserted that he had hoped to be able to repay the $8,000 and tell the client there was no financing available for the sale to be accomplished. He did not intend to tell the client what he had done, namely, take the $8,000 under false pretenses and use it to cover other expenses. The referee found that the client was greatly embarrassed by the "scam" he had been involved in and was forced to retract statements he had made to his friends and business associates regarding the sale of his business and his plans for investing the proceeds.

¶ 10.   The second matter to which the parties stipulated and for which the referee made appropriate findings concerned Attorney Sheehan's representation of a couple who retained him in December of 1994 to complete the sale of their business and dissolve their corporation. Attorney Sheehan told the clients they were going to incur a large tax liability and said he could save them a substantial amount of money by preparing their tax returns. In late December 1994 he asked the clients for and received from them a check for $15,400 to cover estimated federal and state taxes relating to their personal returns, fees to an accountant for preparation of the federal and state corporate

returns and estimated taxes related to them, and fees and costs to himself for preparing the clients' personal returns and for services to be performed in connection with the dissolution of the corporation.

¶ 11. On the same day he received that payment and in the presence of his clients, Attorney Sheehan wrote out seven checks on one of his client trust accounts totaling $15,400, including a $4,000 payment to the Internal Revenue Service for the federal corporate return, $1,900 to the Wisconsin Department of Revenue for the state corporate return, $3,000 to the IRS for the federal personal return, $1,500 to the Wisconsin Department of Revenue for the state personal return, $3,400 to the accountant, and two checks to himself, one for $1,200 and the other for $300. He placed five of those seven checks in the clients' file, but they were never sent to the payees.

¶ 12. The following day, the clients' $15,400 check was deposited into one of Attorney Sheehan's trust accounts, which then had a balance of $5,183.51. He deposited the two checks to himself into his own accounts. Bank records disclosed that Attorney Sheehan used the clients' $15,400 to make disbursements to himself and to other clients.

¶ 13. On their respective due dates, Attorney Sheehan told his clients not to worry about their corporate and personal tax returns, as he had filed for extensions, adding that they would be receiving a $600 refund from the Department of Revenue. In August 1995 the clients were notified by the Department of Revenue that an adjustment had been made in their 1994 personal tax return, as it showed an incorrect amount for the itemized deduction credit and incorrectly indicated that $1,500 in estimated taxes had been paid. In fact, no estimated taxes had been paid,

49

and the clients then owed $991.16 in additional taxes and interest.

¶ 14. The clients also received notice from the IRS that adjustments had been made on their federal personal return: there was an underpayment of $4,811 in taxes, with penalties and interest of $1,681.17, as a result of an incorrect amount claimed as estimated tax payments and credits. During the fall of 1995, the clients also learned that the corporate dissolution papers had not been filed. In early December 1995 the clients were notified by the IRS that they owed $1,523.81 for the underpayment of corporate taxes, including penalties and interest.

¶ 15. The clients retained another attorney to recover money owed to them by virtue of Attorney Sheehan's failure to pay estimated taxes and to obtain the return of the $15,400 they had paid him. On September 1, 1995, Attorney Sheehan wrote a check for $4,213 on one of his client trust accounts as partial repayment of the $15,400 and other checks in the succeeding three months, one for $5,500, one for $1,000 and the third for $1,500. He made no payments to them after mid-February 1996. The clients claimed that Attorney Sheehan owes them approximately $7,000 plus interest.

¶ 16. The third matter considered in this proceeding concerned Attorney Sheehan's representation of a man who had cerebral palsy, suffered mental problems, and was physically dependent on others. The man's sister asked Attorney Sheehan to help her brother with several matters, including minor altercations with the police. Attorney Sheehan represented the man for one and one-half years without compensation.

¶ 17.   In April 1995 the client was struck by an automobile and suffered serious injuries. The client asked Attorney Sheehan to settle the personal injury claim, but there was no written contingency fee agreement for that representation.

¶ 18.   At about this time, another sister of the client sought a permanent guardianship for her brother and was appointed temporary guardian. The court denied the petition for permanent guardianship, finding the man to be competent.

¶ 19.   Attorney Sheehan settled the client's personal injury case in October 1995, receiving a settlement check for $85,000, which he deposited into one of his client trust accounts. The client, who had been residing with his other sister between the fall of 1995 and May 1996, was left to live at a homeless shelter.

¶ 20.   In June 1996 another petition for permanent guardianship was filed by the client's sister, and the sister's attorney asked Attorney Sheehan for copies of all documents relating to the personal injury settlement and for an accounting of the proceeds. The court appointed Attorney Sheehan conservator and directed the man's sister to turn over any funds remaining from the man's Social Security checks she had been receiving on his behalf. During a meeting to discuss the personal injury settlement and the manner in which it was disbursed, Attorney Sheehan stated that he did not have an exact accounting of the client's money because of accrued interest and because the investments in which he had placed it involved other clients' funds, but he promised a detailed accounting at a later date. He ultimately provided a copy of payments he asserted had been made on behalf of the client.

¶ 21. Bank records disclosed that following the deposit of the $85,000, Attorney Sheehan made payments of $32,665.94 on behalf of his client but did not show a disbursement of a one-third contingent fee to himself. Even if Attorney Sheehan had left that fee in his trust account, there should have been $31,061.06 of the client's funds in that account on December 31, 1995. In fact, the account balance on that date was $10,080.51. Attorney Sheehan used a portion of the client's funds to make disbursements to himself and to other clients.

¶ 22. In January 1997 the court removed Attorney Sheehan as conservator and directed him to submit a final accounting of funds being held on the man's behalf. Attorney Sheehan provided a final accounting, but it did not indicate from which account each of the several disbursements made on behalf of the man had come. Based on that accounting, there should have been $30,986.06 of the client's funds in that account on December 31, 1995; the actual balance on that date was $10,080.51.

¶ 23. The referee found that the client regarded Attorney Sheehan as his friend and someone he could trust, but as a result of the mismanagement of his funds, he came to believe Attorney Sheehan stole his money and now finds it difficult to trust anyone. The referee also found that Attorney Sheehan has no appreciation of the client's feelings of distrust and his concern about how his funds were accounted for and invested.

¶ 24. On the basis of those facts, the referee made the following conclusions of law, to which the parties had stipulated: Attorney Sheehan engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), by witnessing the

signature on the offer to purchase knowing that it had been forged, presenting that offer to his client without disclosing that it was invalid and contained a forged signature, inducing the client to pay him an $8,000 partial commission on the purportedly valid contract knowing it was invalid and that no sale would occur, depositing that commission into his client trust account and withdrawing portions of it to pay other clients, his office personnel, and himself, repeatedly leading his client to believe for some 10 months that the offer to purchase was valid and that the sale would close, and using $2,000 in client trust funds belonging to unidentified clients as partial repayment of the $8,000 to his client. In respect to this matter, the referee also concluded that Attorney Sheehan commingled his own funds with the funds of clients, in violation of SCR 20:1.15(a),[1] represented multiple clients having differing interests in the same matter, contrary to SCR 20:1.7(b),[2] and failed to keep the requisite records of

---

[1] At the time relevant to this proceeding, SCR 20:1.15 provided, in pertinent part:

**Safekeeping property**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. . . .

[2] SCR 20:1.7 provides, in pertinent part:

**Conflict of interest: general rule**

. . .

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken,

his client trust account dealings, in violation of SCR 20:1.15(e).[3]

¶ 25.    In respect to the second matter, the referee concluded that Attorney Sheehan failed to provide competent representation and act with reasonable diligence and promptness in representing the couple who retained him to dissolve their corporation and prepare their tax returns, in violation of SCR 20:1.1[4] and 1.3.[5]

the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[3] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(e)    Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

[4] SCR 20:1.1 provides:

**Competence**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill,

In addition to failing to file personal state and federal tax returns correctly reflecting the amount of their liability, which resulted in additional taxes, penalties, and interest, Attorney Sheehan failed to file corporate dissolution papers with the state and failed to forward corporate tax returns to the accountant for review prior to filing them, despite promises to the client that he would do so.

¶ 26.   Also, he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), by advising the clients to deposit $15,400 into his client trust account and then failing to make withdrawals in accordance with the statement he had presented to them showing the amount of disbursements to be made with the filing of personal and corporate tax returns. He also engaged in such misconduct by withdrawing funds belonging to those clients to pay other clients and himself and using other clients' funds as partial repayment of the money he owed the tax clients. In addition, he failed to hold the clients' property in trust, in violation of SCR 20:1.15(a), and failed to keep the requisite trust account records, in violation of SCR 20:1.15(e).

¶ 27.   In the third matter, the referee concluded that Attorney Sheehan engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by disbursing a portion of his client's settlement to other clients and to himself and by making disbursements on behalf of the client from other accounts, one of them a

---

thoroughness and preparation reasonably necessary for the representation.

[5] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

trust account, that did not contain funds belonging to that client. Also, he failed to hold that client's property in trust and commingled his own funds with client funds, in violation of SCR 20:1.15(a). His failure to keep an accurate accounting of the disbursements made on the client's behalf and to keep other requisite trust account records violated SCR 20:1.15(e). Finally, by representing the client in a personal injury matter on a contingency fee basis without having obtained a written contingent fee agreement setting forth the percentage fee in the event of settlement, trial, or appeal, as well as how litigation expenses were to be deducted, he violated SCR 20:1.5(c),[6]

¶ 28.   In recommending license revocation as discipline for Attorney Sheehan's misconduct, the referee noted a number of mitigating factors asserted by Attorney Sheehan, most of which she found unconvincing. She gave some weight to the facts that he has not been the subject of prior discipline, made some good faith efforts to make restitution or rectify the consequences

---

[6] SCR 20:1.5 provides, in pertinent part:

**Fees**

. . .

(c)   A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusions of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

of his misconduct in two of the three matters, and paid back most of the client funds he had misappropriated.

¶ 29.  The referee considered the following factors in aggravation of the seriousness of Attorney Sheehan's misconduct and the severity of discipline to impose for it. He exhibited a dishonest, selfish motive; there was a clear and disturbing pattern of misconduct similar in all three of the matters; there were multiple offenses, each with several acts of misconduct; his clients were particularly vulnerable and dependent on him as a trusted professional; he had substantial experience in the practice of law; he appeared indifferent to making further restitution, despite promises he made to do so. Most important, the referee asserted, was Attorney Sheehan's refusal to acknowledge his wrongful conduct and appreciate how egregious that conduct was and the effect it had on his clients. Despite his many excuses for that conduct, the referee took into consideration that Attorney Sheehan never understood or took full responsibility for the harm he had done to his clients and showed no genuine remorse.

¶ 30.  In addition to the license revocation, the referee recommended that in the event Attorney Sheehan fails to make adequate payment of restitution as his clients have requested, a hearing be held to determine an appropriate payment of restitution to each of them. The Board took the position in the appeal that as the precise amount owing to each of the clients has not been determined, determination of the restitution issue should be left to such time as Attorney Sheehan seeks to have his license to practice law reinstated.

¶ 31.  We adopt the referee's findings of fact and conclusions of law in respect to Attorney Sheehan's professional misconduct established in this proceeding,

and we determine that the license revocation recommended by the referee is the appropriate discipline to impose for it. In addition, we require Attorney Sheehan to pay the costs of this proceeding and leave the issue of restitution to his clients for future determination at such time as Attorney Sheehan seeks license reinstatement.

¶ 32. IT IS ORDERED that the license of Patrick B. Sheehan to practice law in Wisconsin is revoked, effective the date of this order.

¶ 33. IT IS FURTHER ORDERED that within 60 days of the date of this order Patrick B. Sheehan pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

¶ 34. IT IS FURTHER ORDERED that Patrick B. Sheehan comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law has been revoked.